\IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:24-CV-207-FL

| | | |
|---|---|---|
| FRANCES VALENCIANO LOERA as Administrator of the Estate of GUADALUPE VAZQUEZ-ALVARADO, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| STELLAR HVAC, LLC, | ) ) | |
| Defendant. | ) | |

- - - - -

| | | |
|---|---|---|
| STELLAR HVAC, LLC, | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| HVAC ANTELE SERVICE LLC, | ) ) | |
| Third-Party Defendant. | ) ) | |

This matter is before the court upon motions for summary judgment filed by 1) plaintiff Frances Valenciano Loera as Administrator of the Estate of Guadalupe Vazquez-Alvarado against defendant Stellar HVAC, LLC (sometimes "Stellar") (DE 39); 2) defendant against plaintiff (DE 45); and 3) third-party defendant HVAC Antele Service, LLC (sometimes "Antele") against defendant (DE 49).

## STATEMENT OF THE CASE

Plaintiff initiated this tort action by complaint filed in Wayne County Superior Court on February 16, 2024, removed to this court April 5, 2024. Plaintiff asserts claims for negligence and wrongful death arising out of a forklift accident. On August 6, 2024, defendant filed third-party complaint against Antele, seeking indemnity under a contract between these parties.

Plaintiff filed motion for summary judgment March 6, 2025, with reliance upon expert report, various parties' discovery materials, state investigatory report about the accident, and deposition of defendant's Rule 30(b)(6) representative. Defendant and third-party defendant Antele filed their respective motions March 31, 2025. Defendant relies upon subcontracts involved in this case, fire department and medical examiner's reports, depositions of various parties including plaintiff and its own Rule 30(b)(6) representative, and sworn testimony of Antele's principal. Third-party defendant Antele relies upon the same materials, as well as a photograph of the forklift in question and workers' compensation settlement agreement. Various additional discovery materials and other materials related to the incident, including decedent's death certificate, also have come into the record before the court.

## STATEMENT OF FACTS

A.  Cross-Motions Between Plaintiff and Defendant

Former defendant Hathaway Construction Services, Inc. ("Hathaway")[1] was general contractor for a 312-unit apartment complex constructed in Union County, North Carolina named

---

[1] The parties attempted to dismiss Hathaway by stipulation on May 15, 2025. However, this filing failed to comply with Federal Rule of Civil Procedure 41, in that it did not contain the signature of all parties that have appeared. Fed. R. Civ. P. 41(a)(1)(A)(ii). The parties rectified this error on July 23, 2025. (Stipulation of Dismissal (DE 82)). The court has reformed the caption to reflect the dismissal.

"Exchange at Indian Trail." (the "Project"). (Defendant's Resp. SMF (DE 67) ¶ 1).[2] Defendant was the heating, ventilation, and air conditioning ("HVAC") subcontractor on the Project, under terms of a subcontract between Hathaway and defendant. (Pl's SMF (DE 41) ¶ 1). Defendant contracted with Antele to provide labor for HVAC work. (Id.). Third-party defendant Antele employed Guadalupe Vasquez-Alvarado ("decedent"). (Id.). On April 27, 2023, decedent and a wooden box fell from an elevated height from a forklift together, and the wooden box fell upon decedent's head, killing him. (Id. ¶ 2). The forklift was operated by an employee of defendant named Brian Gramenz ("Gramenz"). (Id. ¶ 3). Gramenz was defendant's jobsite foreman. (Id. ¶ 4).

The North Carolina Department of Labor Occupational Safety and Health Division ("OSH") investigated the accident and issued four citations against defendant: 1) "Violation: serious . . . employer did not ensure that each powered industrial truck operator was competent to operate a powered industrial truck safely, as demonstrated by the successful completion of the training and evaluation specified in this paragraph"; 2) "Violation: serious . . . front-end loaders and similar pieces of equipment were used to support scaffold platforms without being specifically designed by the manufacturer for such use"; 3) "Violation: serious . . . scaffolds were not designed by a qualified person"; and 4) "Violation: serious . . . employer used forklifts to support scaffold platforms without ensuring that the entire platform was attached to the fork and that the fork was not moved horizontally while the platform was occupied." (Id. ¶ 5).

Defendant's Rule 30(b)(6) representative testified that the forklift was used improperly to transport a person. (Id. ¶ 6). Defendant settled these violations with OSH, and paid a fine. (Id. ¶

---

[2] Only defendant's response to plaintiff's statement of material facts includes the context of the project. The court recounts this context purely for background purposes, and does not deem this fact admitted or otherwise rely upon it in resolving issues now before it.

7; Def's Resp. SMF ¶ 7). Defendant does not dispute that it was improper for Gramenz to operate the forklift with a passenger on it, that doing so violated defendant's training, and that Gramenz's actions were improper and unsafe. (Id. ¶¶ 8–9; Def's Resp. SMF ¶¶ 8–9).

B.   Third-Party Defendant's Motion Against Defendant

An indemnity provision exists in the contract between Stellar and its subcontractor Antele (Antele SMF (DE 58) ¶ 1). It reads:

> **11. Indemnity.** Subcontractor agrees to defend, indemnify, hold harmless and exonerate Stellar HVAC, its surety, and the Builder, the Owner and each of their respective officers, directors, employees, (hereinafter "Indemnitees") to the fullest extent allowed by law from any and all liabilities, claims, lawsuits, arbitrations, fines, or other charges for any property damages, personal injury or economic losses (hereafter "Claims"), which are caused in whole or in part by Subcontractor its employees and agents. This Indemnity Agreement shall extend to and include the full amount of all Claims whether or not caused in part by Indemnitees, except that Subcontractor shall not be liable under this Indemnity Agreement for Claims directly caused by or resulting from the sole fault or gross negligence of Indemnitees. Subcontractor acknowledges consideration for his Indemnification Agreement of Ten ($10.00) Dollars of the contract price. The Subcontractor's obligations under this indemnity agreement shall not exceed $1,000,000.00.

(Antele Subcontract (DE 51-1) 4).

Antele was an independent contractor and not an employee or agent of defendant. (Antele SMF ¶ 2). Decedent was an employee of third-party defendant Antele, and Gramenz was an employee of defendant Stellar who at all times acted within the scope of his employment. (Id. ¶¶ 3–4).

At time of decedent's death, Gramenz was jobsite foreman whose role was to manage the jobsite, operate a forklift to help move material from suppliers' trucks, and coordinate with the general contractor and subcontractors. (Id. ¶ 5; Defendant's SMF (DE 70) ¶ 5). At time of decedent's death, Gramenz was operating a forklift with a wooden box, made of siding and wood and used to hold construction debris, located on its forks, to lift decedent up to materials located on top of an eight-foot tall storage container. (Antele SMF ¶ 6; Moore Dep. (DE 56-5) 30:17–24, 31:17–32:11). It is undisputed that Gramenz was not authorized to operate a forklift for any

4

purpose except to move material off of suppliers' trucks, (Defendant's SMF (DE 70) ¶ 6), and that such actions were unsafe and in violation of Gramenz's training. (Id. ¶ 7).

**COURT'S DISCUSSION**

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached

5

exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B. Analysis

    1. Plaintiff and Defendant's Cross-Motions for Summary Judgment

The court turns first to the cross-motions for summary judgment, raising issues of contributory negligence and last clear chance under North Carolina law, between plaintiff and defendant.

        a. Contributory Negligence

Under North Carolina law, contributory negligence by a plaintiff will bar recovery. Nicholson v. Am. Safety Utility Corp., 346 N.C. 767, 773 (1997). A defendant who asserts contributory negligence as a defense, as defendant does here, bears the burden of proof. Atkins v. Moye, 277 N.C. 179, 184 (1970). If there is "more than a scintilla of evidence" of contributory negligence, the issue must be submitted to the jury and cannot be resolved by the court. Cobo v. Raba, 347 N.C. 541, 545 (1998).

To present contributory negligence to a jury, a defendant must show that a plaintiff's injuries were proximately caused by that plaintiff's own negligence. Id. This requires a showing that a plaintiff failed to use ordinary care to protect himself from the asserted injury, or that a plaintiff's behavior was the proximate cause of the injury. Id. A sufficient showing under either prong dictates the submission of the issue to a jury. Id.

The standard of care is objective, not subjective. Id. at 545–46. A plaintiff engages in contributory negligence if his conduct ignores unreasonable dangers which would have been apparent to a prudent person exercising ordinary care, regardless of the plaintiff's subjective knowledge of the hazard. Id. Finally, the plaintiff need not have foreseen the precise injury he ultimately suffered. Hairston v. Alexander Tank & Equip. Co., 310 N.C. 227, 233–34 (1984).

This is not the rare case in which contributory negligence appropriately could be resolved on summary judgment. North Carolina courts uniformly have held for decades that "the application of the prudent man test, or any other applicable standard of care," is for the jury, and that negligence issues generally are "not susceptible of summary adjudication." Taylor v. Walker, 320 N.C. 729, 734 (1987); see, e.g., Jones v. J. Kim Hatcher Ins. Agencies, Inc., 915 S.E.2d 118, 127 (N.C. 2025); Martishius v. Carolco Studios, Inc., 355 N.C. 465, 479 (2002); King v. Allred, 309 N.C. 113, 115 (1983); Williams v. Carolina Power & Light Co., 296 N.C. 400, 405 (1979); Page v. Sloan, 281 N.C. 697, 706 (1972); Rea v. Simowitz, 225 N.C. 575, 580 (1945).

Both parties ask the court to apply the standard of care and pronounce the other side to have breached it as a matter of law. But in this case the above authority makes clear that such resolution is not appropriate. Indeed, the parties repeatedly insist that the court decide what a prudent person would or should have done, invoking principles of "common sense," and clashing over slippery and subjective factual issues such as whether decedent was "smart." (See Def's

Resp. Br. at 7–12; Pl's Br. (DE 40) 6–8). "Simply put, this is not the rare case where negligence is so obvious that the court should decide it as a matter of law, because what is reasonable under [the] circumstances is . . . a question on which . . . people . . . can disagree." Jones, 915 S.E.2d at 129 (quoting Mark W. Norris, North Carolina Law of Torts § 19.29(1)(c)(iv)). In this case, these arguments are appropriately resolved only by a jury, not by this court as a matter of law. E.g., Walker, 320 N.C. at 734.

b. Last Clear Chance

Under North Carolina law, the doctrine of last clear chance can permit a plaintiff to recover despite plaintiff's contributory negligence.[3] The doctrine's elements are that 1) plaintiff, by his own negligence, placed himself into a position of helpless peril; 2) defendant discovered, or should have discovered, the position of plaintiff; 3) defendant had time and ability to avoid the injury; 4) defendant negligently failed to do so; and 5) plaintiff was injured as a result. Kenan v. Bass, 132 N.C. App. 30, 33 (1999); see Vancamp v. Burgner, 328 N.C. 495, 498 (1991) (stating elements in materially the same way but adapted specifically to a traffic accident case). The burden of proving last clear chance rests upon the plaintiff. Vernon v. Crist, 291 N.C. 646, 654 (1977).

Where the court finds no genuine issue of material fact bearing on plaintiff's failure to show decedent was in a position of helpless peril, summary judgment in favor of defendant on the last clear chance doctrine is appropriate. The first element requires that the plaintiff be in a position from which he "is powerless to extricate" himself. Proffitt v. Gosnell, 257 N.C. App. 148, 166 (2017); Outlaw v. Johnson, 190 N.C. App. 233, 239 (2008). For example, the Supreme Court of North Carolina held the first element met when a woman with severely compromised vision negligently attempted to cross a street without the benefit of traffic signals or a crosswalk.

---

[3] The doctrine presupposes antecedent acts of negligence by the defendant and of contributory negligence by the plaintiff. Clodfelter v. Carroll, 261 N.C. 630, 634 (1964).

8

Burgner, 328 N.C. at 498. North Carolina appellate authority emphasizes that helpless peril focuses on whether the plaintiff is able to perceive his surroundings and discover danger for himself. See, e.g., Outlaw, 190 N.C. App. at 238; Culler v. Hamlett, 148 N.C. App. 372, 379–80 (2002) (relying upon Burgner, 328 N.C. at 498); Williams v. Odell, 90 N.C. App. 699, 704 (1988). In contrast, the first element is not met if the plaintiff is aware of the danger and simply chooses to risk it. See Clodfelter, 261 N.C. at 635; Proffitt, 257 N.C. App. at 212; Odell, 90 N.C. App. at 704.

Defendant argues that decedent was aware of the danger and chose to take the risk, rather than being unable to perceive the danger for himself. In particular, defendant compares this case to Stephens v. Mann, 50 N.C. App. 133 (1980). This comparison is persuasive and apposite. In Mann, decided as a matter of law in the posture of directed verdict, the plaintiff rode in the bed of a pickup truck to hold down unsecured furniture, and was thrown from the truck once the defendant began driving the vehicle. Id. at 137. On those facts, the court concluded that plaintiff had been in a position of danger, but not of helpless peril as required to apply the last clear chance doctrine. Id. The plaintiff was not helpless to protect herself, and was not unable to ameliorate her dangerous situation. Id.

Here there is no evidence from which it could be inferred decedent did not enter or mount the wooden box with knowledge and under his own power.[4] There is nothing in the record to suggest defendant was unable to perceive the danger for himself. Clearly, decedent was not in a position of helpless peril under the persuasive reasoning of Mann.

---

[4] While this statement sounds as hearsay, and is not relied upon in the court's decision-making, defendant points to deposition testimony of Tyler Bond, an engineer employed by Hathaway, that Gramenz told him decedent suggested using the wooden box to retrieve materials, over Gramenz's objection. (Defendant's SMF Ex. 4 (DE 47-4) 30:23–31:13).

9

Plaintiff argues that decedent was in helpless peril after failing from the forklift but before being crushed by the box, but this argument does not disturb the above conclusion. The uncontradicted evidence is that there was no such interval, because plaintiff and the box fell from the forklift together at virtually the same time, such that Gramenz lacked any time or opportunity to avoid the injury. Bass, 132 N.C. App. at 33; (see NCDOL Citations (DE 42-10) 2; Medical Examiner's Report (DE 56-2) 4). Defendant's motion is granted insofar as it seeks to preclude plaintiff's use of the last clear chance doctrine to permit recovery in the event a jury finds decedent contributorily negligent. See Clodfelter, 261 N.C. at 634.

2. Third-Party Defendant's Motion for Summary Judgment

The court turns now to third-party defendant Antele's motion seeking judgment against defendant on its claim premised upon contractual indemnity. Because, as discussed below, that clause is unenforceable under North Carolina law, summary judgment in favor of movant is warranted.[5]

The parties' arguments on unenforceability revolve around N.C. Gen. Stat. § 22B-1 which renders unenforceable any provision in a construction agreement purporting to require a promisor, here Antele, to indemnify or hold harmless the promisee, Stellar, or the promisee's employees or agents against liability arising in whole or in part by the negligence of the Stellar or its employees or agents. Id. § 22B-1(a). In this part the statute reads:

> Provisions in, or in connection with, a construction agreement or design professional agreement purporting to require a promisor to indemnify or hold harmless the promisee, the promisee's independent contractors, agents, employees, or indemnitees against liability for damages arising out of bodily injury to persons or damage to property proximately caused by or resulting from the negligence, in

---

[5] The subcontract between defendant and Antele contains a Georgia choice-of-law clause. (Antele Subcontract at 4). However, defendant does not challenge Antele's brief argument that this choice-of-law clause is invalid under N.C. Gen. Stat. § 22B-2. Both parties otherwise affirmatively rely upon, and engage with, the law of North Carolina. This constitutes waiver of the clause. See Wiener v. AXA Equitable Life Ins. Co., 58 F.4th 774, 779–82 (4th Cir. 2023).

10

> whole or in part, of the promisee, its independent contractors, agents, employees, or indemnitees, is against public policy, void and unenforceable. Nothing contained in this subsection shall prevent or prohibit a contract, promise or agreement whereby a promisor shall indemnify or hold harmless any promisee or the promisee's independent contractors, agents, employees or indemnitees against liability for damages resulting from the sole negligence of the promisor, its agents or employees.

Id.

In other words, the statute prohibits enforcement of an indemnity clause in a construction contract which purport to indemnify a party for damages arising even in part from its own negligence. The contract between Stellar and Antele plainly attempts to establish an indemnity regime which § 22B-1(a) prohibits. The contract provides that Antele will indemnify Stellar for "any and all" liabilities "whether or not caused in part by [defendant]." (Antele's SMF Ex. 1 (DE 59-1) 4).

Defendant argues against the application of § 22B-1(a) on grounds the contract falls within the statute's exception for insurance and worker's compensation agreements. (See Defendant Br. Antele (DE 72) 9). However, the language of § 22B-1 precludes this reading. The pertinent subsection removes from the statute's scope "insurance contract[s], worker's compensation, or any other agreement issued by an insurer." N.C. Gen. Stat. § 22B-1(e) (emphasis added). The plain language of the statute is thus limited to contracts that are issued by insurers. Id.; see Miller Brewing Co. v. Morgan Mech. Contractors, Inc., 90 N.C. App. 310, 317 (1988).

Although Miller Brewing addressed the first portion of this provision concerning "insurance contracts," its reasoning is applicable to the portion addressing workers compensation as well. The general phrase "or any other agreement," read in context, necessarily contemplates that the two named types of contracts also fall within the exception only if issued by an insurer. See Miller Brewing, 90 N.C. App. at 317; Happel v. Guilford County Bd. of Educ., 387 N.C. 186,

209 (2025) (recognizing that interpretive canons of noscitur a sociis and ejusdem generis apply to interpretation of North Carolina statutes). Indeed, worker's compensation is a common type of insurance policy frequently addressed by the North Carolina courts. E.g., Estrada v. Timber Structures, Inc., 237 N.C. App. 202, 206 (2014); Diaz v. Smith, 219 N.C. App. 570, 574–75 (2012); Wilson v. Claude J. Welch Builders Corp., 115 N.C. App. 384, 385–86 (1994). Defendant's argument that the Miller Brewing court did not address specifically the worker's compensation subclause points out a distinction that does not make a difference.

Defendant's citations to Gibbs v. Carolina Power & Light Co., 265 N.C. 459 (1965), and to North Carolina's substantive worker's compensation statutes, are inapposite. As the Miller Brewing court recognized, the exception clause here exists to save insurance policies naming the buyer of construction services as the insured, including those which provide worker's compensation coverage, from invalidation. See Miller Brewing, 90 N.C. App. at 317. The North Carolina worker's compensation law expressly permits recovery in these circumstances through a contractual indemnity clause, N.C. Gen. Stat. § 97-10.2(e), but defendant's reliance on this statute assumes an improper premise: that the indemnity clause here does not violate § 22B-1 and is therefore enforceable. North Carolina's worker's compensation statutes are not otherwise relevant to any of the contracts or disputes in this case. And in the absence of any authority construing the worker's compensation subclause as defendant argues, which defendant does not present and which the court's own research has not revealed, the court is unwilling to read § 22B-1(e) against the plain meaning of its text and the persuasive logic of Miller Brewing. In sum, neither party to the contract at hand is an insurer, and so this exemption is inapplicable.

Defendant's only other argument is that decedent was himself negligent, such negligence is imputable to Antele, and as such defendant does not seek indemnification for its sole negligence.

This argument presupposes that decedent was negligent, which the court determined above is not appropriate at this stage. But even with this assumption in operation, § 22B-1(a) applies to clauses that seek to indemnify a party for claims resulting "from the negligence, in whole <u>or in part</u>, of the promisee[.]" N.C. Gen. Stat. § 22B-1(a) (emphasis added). Even if decedent engaged in contributory negligence, that fact would not save this indemnity provision from invalidation under the statute.

Finally, in certain circumstances, North Carolina courts will excise an unenforceable portion of a contractual clause to salvage the remainder, including in cases involving § 22B-1(a). <u>Rose v. Vulcan Materials Co.</u>, 282 N.C. 643, 658 (1973); <u>Int'l Paper Co. v. Corporex Constructors, Inc.</u>, 96 N.C. App. 312, 315 (1989) (applying principle to contract covered by § 22B-1(a)). Application of this severability doctrine is permissible only if the enforceable remainders of the contract are "in no way dependent upon the enforcement of the illegal provision for their validity." <u>Rose</u>, 282 N.C. at 658.

The phrase that violates § 22B-1(a) is "whether or not caused in part by [defendant]." (Antele SMF Ex. 1 at 4). If this phrase is excised from the contract, the preceding phrase in this sentence would still read "[t]his Indemnity Agreement shall extend to and include the full amount of all Claims[.]" (<u>Id.</u>). The words "all claims" would still violate § 22B-1(a) as encompassing any claims caused in part by the negligence of defendant, and these two words cannot themselves be removed without rendering the clause meaningless and so requiring the improper invention and insertion of substantial language on the court's part. (<u>See</u> <u>id.</u>); <u>Whittaker Gen. Med. Corp. v. Daniel</u>, 324 N.C. 523, 528 (1989) ("the courts will not rewrite a contract if it is too broad but will simply not enforce it"); <u>see also</u> <u>Wells Fargo Ins. Servs., USA, Inc. v. Link</u>, 372 N.C. 260, 272–73 (2019) (declining to apply severability principles to an unenforceable contract); <u>Hartman v.</u>

W.H. Odell & Associates, Inc., 117 N.C. App. 307, 317 (1994) (emphasizing that severability doctrine under North Carolina law is "severely limit[ed]").

In sum, the indemnity provision in the contract between Stellar and Antele is unenforceable under N.C. Gen. Stat. § 22B-1(a), and is not saved by that statute's workers' compensation exception or by severability doctrine. Summary judgment in third-party defendant's favor against defendant's contractual indemnification claim is warranted.

## CONCLUSION

For the foregoing reasons:

1. Plaintiff's motion for summary judgment (DE 39) is DENIED;

2. Defendant's motion for summary judgment (DE 45) is GRANTED IN PART insofar as seeks to preclude plaintiff from recovering through the last clear chance doctrine, and otherwise DENIED; and

3. Third-party defendant's motion for summary judgment (DE 49) is GRANTED, and defendant's claim against Antele is DISMISSED.

And moreover:

1. In accordance with the case management order entered July 15, 2024, this case now is ripe for entry of an order governing deadlines and procedures for final pretrial conference and trial;

2. Plaintiff and defendant are DIRECTED to confer and file within **14 days** from the date of this order a joint status report informing the court of 1) estimated trial length; 2) particular pretrial issues which may require court intervention in advance of trial, if any; and 3) at least three suggested alternative trial dates; and

3. The parties shall specify therein if they wish to schedule a court-hosted settlement conference or additional alternative dispute resolution procedures in advance of trial, and if so the date for completion of such; and 2) whether telephonic conference is requested with the court prior to its entry of its case management order.

SO ORDERED, this the 23rd day of July, 2025.

                                               LOUISE W. FLANAGAN
                                               United States District Judge